IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CAREY S. MITCHELL, ) | |
| ) | |
| Petitioner, ) | Case No. CV 06-65-S-LMB |
| ) | |
| v. ) | |
| ) | MEMORANDUM DECISION |
| COMMISSIONER, SOCIAL SECURITY ) | AND ORDER |
| ADMINISTRATION, ) | |
| ) | |
| Respondent. ) | |
| _____) | |

Currently pending before the Court is Carey S. Mitchell's Petition for Review seeking review of the final decision of Respondent denying her claim for disability insurance benefits and supplemental security income benefits. The action is brought pursuant to 42 U.S.C. § 405(g).

Having carefully reviewed the record, and otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

**I.**

**ADMINISTRATIVE PROCEEDINGS**

Carey S. Mitchell ("Petitioner" or "Claimant") applied for disability insurance benefits under Title II of the Social Security Act and for supplemental security income benefits under

MEMORANDUM DECISION AND ORDER - 1

Title XVI of the Act on April 28, 2003 (protective filing date).[1]  (AR 18).  Petitioner alleged disability beginning February 13, 2002 as a result of persistent chronic abdominal pain, fibromyalgia, psychological pain disorder, sleep apnea, personality disorder, affective disorder, and obesity.  (AR 19).  Petitioner's application was denied initially and again after reconsideration.  Petitioner filed a timely request for a hearing before an Administrative Law Judge ("ALJ").  ALJ Hayward C. Reed held a hearing on March 29, 2005 at which time Petitioner, represented by counsel, appeared and testified.  Dr. James Bruce, a medical expert, and Dr. Polly Peterson, a vocational expert, also testified.  (AR 375-98).  On June 2, 2005, the ALJ issued a decision denying Petitioner's claim because he found Petitioner is capable of performing a significant range of light work and is therefore not disabled.  (AR 28).

Petitioner requested the Appeals Council review the ALJ's decision.  The Appeals Council denied Petitioner's request on December 27, 2005, making the ALJ's decision the final decision of the Commissioner of Social Security.

Having exhausted her administrative remedies, Petitioner timely filed this instant action. Petitioner argues that the ALJ improperly evaluated the treating and consulting physicians' opinions and the ALJ's credibility findings regarding Petitioner's testimony are not supported by substantial evidence.  Petitioner requests that the ALJ's decision be reversed.

---

[1]  Petitioner previously filed applications for disability insurance benefits and supplemental security income benefits.  Those applications were protectively filed on December 29, 1998, and denied on April 30, 1999.  (AR 18).

MEMORANDUM DECISION AND ORDER - 2

## II.

## BACKGROUND

At the time of the hearing before the ALJ, Petitioner was 28 years old with a high school education and work experience as a fast food worker, teacher's aide, deli worker, cashier checker, electronic assembly worker, and photo lab technician.  (AR 19).

## III.

## STANDARD OF REVIEW

It is undisputed that the burden of proof rests upon Petitioner to establish an entitlement to disability benefits.  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  In evaluating the evidence at an administrative hearing, the ALJ must follow a five-part sequential process.  20 C.F.R. §§ 404.1520, 416.920 (2005).  The second part of that process involves a determination regarding whether the claimant has a "severe impairment."  20 C.F.R. § 416.905(a) (2006).  If no "severe" impairment is found, the claimant will be found not to be disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).

To be upheld, the Commissioner's decision must be supported by substantial evidence and be based on proper legal standards.  42 U.S.C. § 405(g) (2005); *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990).  Findings of the ALJ as to any fact, if supported by substantial evidence, are conclusive.  42 U.S.C. § 405(g); *Vidal v. Harris*, 637 F.2d 710, 712 (9th Cir. 1981).  In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence.  *Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). The standard requires more than a scintilla but less than a preponderance, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989), and "does not mean a large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019. The ALJ is responsible for determining credibility and resolving conflicts in medical testimony, *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984), resolving ambiguities, *see Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984), and drawing inferences logically flowing from the evidence, *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Where the evidence is susceptible to more than one rational interpretation in a disability proceeding, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error. *Matney*, 981 F.2d at 1019. The ALJ's construction of the Social Security Act is entitled to deference if it has a reasonable basis in law. *See id*. However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying

MEMORANDUM DECISION AND ORDER - 4

the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987). Reviewing federal courts must bear in mind that the Social Security Act is remedial and should be construed liberally and "not so as to withhold benefits in marginal cases." *Id*. at 1095 (citation omitted).

The issue presented in the instant appeal is whether the Appeals Council's finding that Petitioner was not disabled is supported by substantial evidence and whether it is based on application of proper legal standards.

## IV.

## DISCUSSION

### A.     **Sequential Process**

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920 (1997).

The first step in the sequential process requires the ALJ to determine whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If the answer is in the affirmative, disability benefits are denied. 20 C.F.R. § 404.1520(b). In the instant action, the ALJ concluded that Petitioner has not engaged in substantial gainful activity since the alleged onset of disability. (AR 20).

The second step requires the ALJ to determine whether the claimant has a medically-severe impairment or combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). If the answer is in the negative, disability benefits are denied. 20 C.F.R. § 404.1520(c). The ALJ found that the medical evidence indicates Petitioner has persistent chronic abdominal pain, fibromyalgia,

psychological pain disorder, sleep apnea, personality disorder, affective disorder, and obesity, impairments that are "severe" within the meaning of the Regulations. (AR 20).

The third step in the evaluation process requires the ALJ to determine whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If the answer is in the affirmative, the claimant is disabled and benefits are awarded. 20 C.F.R. § 404.1520(d). In this respect, the ALJ concluded that Petitioner's impairments are not "severe" enough to meet or medically equal, either singly or in combination, one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. (AR 20).

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity is sufficient for the claimant to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). In this respect, the ALJ found that Petitioner retains the residual functional capacity to lift twenty pounds occasionally and ten pounds frequently. She can sit, stand and walk for about six hours in an eight hour day. She is limited to simple one or two step instructions and must have no more than minimal contact with other people. (AR 26). The ALJ concluded that Petitioner cannot perform her past relevant work. (AR 27).

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(f); *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993). In this respect, the ALJ

stated that, based upon Petitioner's residual functional capacity, she is capable of performing a significant range of light work as defined in 20 C.F.R. § 404.1567.  (AR 28).

The vocational expert testified that Petitioner could perform work such as laundry worker, cannery worker or agricultural worker.  Based on the testimony of the vocational expert, the ALJ concluded that Petitioner is capable of making a successful adjustment to work that exists in significant numbers in the national economy and is therefore not under a disability as defined in the Social Security Act at any time through the date of the decision.  (AR 28).

### B.      Opinions of Petitioner's Treating and Examining Physicians

Petitioner asserts that the ALJ did not properly evaluate the opinions of her treating and examining physicians.  *Petitioner's Brief*, p. 2 (Docket No. 16).

#### (1) Examining Physician - Dr. Thiel

Petitioner first objects to the ALJ's treatment of Dr. Deborah Thiel's psychological evaluation.  *Petitioner's Brief*, p. 10 (Docket No. 16).  Dr. Thiel is a psychologist who performed a mental status evaluation for Idaho Disability Determination Services ("DDS") and, thus, is considered an examining doctor under the Social Security Regulations.  (*See* AR 166-72) (Dr. Thiel's report).

The opinion of an examining physician is entitled to considerable weight.  *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  If the examining physician's opinion is uncontradicted, the ALJ must provide clear and convincing reasons for rejecting the opinion.  *Id.* If the examining physician's opinion is contradicted, then the opinion can be rejected for specific and legitimate reasons that are supported by substantial evidence in the record.  *Id.* at 830-31.

The opinion of a nonexamining physician alone cannot constitute substantial evidence sufficient to justify the rejection of an examining physician's opinion. *Id.* at 831.

Petitioner argues that the ALJ did not incorporate into his residual functional capacity assessment Dr. Thiel's findings that Petitioner "had limited ability to concentrate, difficulty planning and completing tasks in a timely manner, difficulty interacting socially, and limited adaptability," and that the ALJ did not explain why he did not incorporate any of these limitations in his assessment. *Petitioner's Brief*, p. 10 (Docket No. 16) (citing AR 172).

The ALJ, however, discussed several of Dr. Thiel's opinions in that portion of his decision rejecting the opinion of Dr. James Bruce, a medical expert who testified at the hearing. The ALJ specifically noted that Dr. Bruce's testimony relied on the opinions offered by Dr. Thiel, particularly that Petitioner has moderate restrictions in activities of daily living, marked restrictions in social functioning, and marked difficulties in maintaining concentration, persistence, and pace. (AR 21).

The ALJ noted that Dr. Bruce had been unable to explain the discrepancies between the findings of Dr. Thiel and Petitioner's report of visiting with friends and relatives. (*See* AR 100) (stating that Petitioner visits her relatives once or twice a week and her friends "sometimes"); (AR 168) (Petitioner's report to Dr. Thiel that she "typically spends her days playing with her son and watching television," that she "may go outside and sprinkle the lawn in the late morning or do light housework," and that she felt capable of caring independently for household chores, cooking, cleaning, and laundry, but also hampered by her pain problem, recent hysterectomy, and low motivation); (AR 395-97) (testimony of Dr. Bruce explaining that he "can't account" for the "discrepancies" in some of Petitioner's activities and Dr. Thiel's report).

MEMORANDUM DECISION AND ORDER - 8

The ALJ went on to explain:

> I find that Dr. Bruce relied upon the opinions offered by Dr. Thiel. I note that Dr. Thiel reported that claimant reported feeling capable of caring independently for household chores, cooking, cleaning and laundry but feels hampered with pain problems [AR 168]. The medical experts at the disability determination services concluded that those are only mild restrictions in activities of daily living. I agree with that finding. . . .

(AR 21).

Thus, the ALJ discussed Dr. Thiel's opinions along with Dr. Bruce's when explaining why he rejected Dr. Bruce's testimony. In particular, the ALJ's discussion indicates that the ALJ did consider Dr. Thiel's opinions, but rejected some of them for the same reasons he rejected the testimony of Dr. Bruce that relied on Dr. Thiel's report.

In addition, with respect to Dr. Thiel's opinions about Petitioner's mild to moderate disruption in attention and concentration (*see* AR 169), the ALJ explained that Dr. Thiel had noted Petitioner "had only mild difficulty maintaining persistence during testing." (AR 21). The ALJ relied on this opinion and the reports of DDS reviewing doctors in concluding that Petitioner had only moderate limitations in concentration, persistence, and pace. (AR 21). (*See also* AR 256) (DDS report indicating only mild restrictions of activities of daily living and moderate difficulties in maintaining social functioning, concentration, persistence, and pace). Although the opinion of a non-examining DDS physician alone cannot constitute substantial evidence, *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996), a non-examining physician's opinion may serve as substantial evidence when that opinion is consistent with other evidence in the record, *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). The evidence of Petitioner's

MEMORANDUM DECISION AND ORDER - 9

activities as reported by Dr. Thiel and, at times, by Petitioner, supports the ALJ's decision. (*See* AR 100, 168).

Moreover, some of Dr. Thiel's findings support the ALJ's assessment, such as Dr. Thiel's finding that Petitioner "has difficulty interacting socially." (AR 172). The ALJ found that Petitioner should be limited to minimal contact with others, a limitation that is supported by Dr. Thiel's finding. (AR 29).

For all of these reasons, the Court concludes that the record supports the ALJ's evaluation and consideration of Dr. Thiel's opinions and, thus, the ALJ's findings and conclusions will not be disturbed on appeal.

### (2) Treating Physician - Dr. Schlickman

Petitioner's second objection is to the ALJ's treatment of Dr. Louis M. Schlickman's opinion. Dr. Schlickman is considered a treating physician under the Regulations and, therefore, his opinion is given special consideration. As the Ninth Circuit Court of Appeals has explained:

> The medical opinion of a claimant's treating physician is entitled to "special weight." The treating physician's opinion is given that deference because "he is employed to cure and has a greater opportunity to know and observe the individual."

*Rodriguez v. Bowen*, 876 F.2d 759, 761 (9th Cir. 1989). However, a "treating physician's opinion on the ultimate issue of disability is not necessarily conclusive." *Id.* at 762 (citations omitted).

Where, as here, a treating doctor's opinion is contradicted by another doctor's opinion, the ALJ may reject it by providing specific and legitimate reasons that are supported by substantial evidence. *Id*. "Substantial evidence means more than a scintilla, but less than a preponderance." *Frost v. Barnhart*, 314 F.3d 359, 366 (9th Cir. 2002). "While inferences from

MEMORANDUM DECISION AND ORDER - 10

the record can constitute substantial evidence, only those reasonably drawn from the record will suffice." *Widmark v. Barnhart*, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation and internal quotation marks omitted).

In determining Petitioner's residual functional capacity, the ALJ noted Dr. Schlickman's report "finding the claimant limited to sitting for four hours, standing less than two hours, and needing to lay/recline about two hours in an eight hour day." (AR 23). The ALJ also cited Dr. Schlickman's opinion that "the claimant needs a job in which she can change positions at will," and have "unscheduled breaks every hour for fifteen to sixty minutes," and Dr. Schlickman's estimate that Petitioner "would miss work four or more times each month." (AR 23); (*see also* AR 292).

Dr. Ward E. Dickey, MD, a reviewing physician with DDS, provided a contrary opinion. Dr. Dickey opined that Petitioner could stand and/or walk (with normal breaks) for about 6 hours in an 8-hour workday and that Petitioner could sit (with normal breaks) for a total of about 6 hours in an 8-hour workday. (AR 266). Dr. Dickey's assessment of Petitioner's limitations included time for "normal breaks" (AR 266), indicating that unusual breaks were not necessary. In addition, Dr. Maximo Callao, another reviewing DDS physician, opined that Petitioner could perform simple tasks "reliably over the course of *a normal work schedule*." (AR 262) (emphasis added).

The ALJ relied on these opinions and did "not give full weight to the opinion of Dr. Schlickman." (AR 25). The ALJ explained that he did not find Dr. Schlickman's "opinions to be well founded and further they are in conflict with other evidence in the record." (AR 25). The ALJ noted that Dr. Schlickman "finds the claimant more limited than the medical experts at

the disability determination services." (AR 25) (*see also* AR 246-72 (DDS reviewing physician reports)). The ALJ went on to note that it "appears that [Dr. Schlickman] did not consider the claimant's daily activities including caring for her son when offering an opinion regarding what the claimant can do." (AR 25).

Dr. Callao noted Petitioner's daily activities, including taking care of her child and her home independently, when assessing Petitioner's capabilities. (AR 262). Dr. Callao's notation is supported by Dr. Thiel's report that Petitioner "typically spends her days playing with her son and watching television," that she "may go outside and sprinkle the lawn in the late morning or do light housework," and that she felt capable of caring independently for household chores, cooking, cleaning, and laundry. (AR 168).

Additionally, there is evidence in the record that Petitioner's condition has improved with treatment. For example, in March of 2003, Dr. Richard DuBose, MD, with the Idaho Pain Center, explained that Petitioner "is up," "is more active," "is back in school," and is "doing well." (AR 142). Additionally, on February 2, 2005, Dr. Kent Kreuder, M.D., with the Surgical Group, P.A., reported that Petitioner's improvement has "been very significant." (AR 294). Dr. Kreuder had performed a procedure on December 21, 2004 designed to release a nerve to alleviate Petitioner' reported pain. (AR 295). Dr. Kreuder dissected the nerve and released it "resulting in complete resolution of the patient's discomfort and shooting pain." (*Id.*) Dr. Krueder reported that after the surgery "vigorous palpation in areas that have caused [Petitioner] excoriating pain, resulted in no discomfort whatsoever." (AR 295).

Moreover, it is notable that Dr. Schlickman's opinion on Petitioner's work restrictions is based on his diagnosis of fibromyalgia. (AR 291). When discussing step two of his analysis, the

ALJ made "objective note that the diagnosis of fibromyalgia is highly questionable," because it was not performed by a rheumatoloigst.[2] (AR 21). The ALJ also noted that Petitioner alleged she suffered from fibromyalgia since about 1997 when she was twenty years old, but had "performed almost all of her work activity *since* that date including her highest yearly earnings . . . in 1997." *Id.* (Emphasis added). The ALJ went on to explain that even if he accepted that Petitioner suffers from fibromyalgia, he did "not find that it presents a significant problem for the claimant demonstrated by the objective medical evidence." (AR 22).

Because Dr. Schlickman's functional capacity assessment was based on the fibromyalgia diagnosis and the ALJ expressed his view of that diagnosis as questionable, and because evidence in the record and DDS physicians' assessments support the ALJ's decision, it will not be reversed on appeal. In other words, substantial evidence in the record supports the ALJ's treatment of Dr. Schlickman's opinions.

### C. Petitioner's Credibility

Petitioner also argues that the ALJ's credibility findings are not supported by substantial evidence. *Petitioner's Brief*, p. 2 (Docket No. 16). The ALJ may reject a claimant's testimony regarding the severity of her symptoms "only if he makes specific findings stating clear and convincing reasons for doing so," and he "must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

---

[2] Rheumatology is the relevant specialty for fibromyalgia. *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004). "Specialized knowledge may be particularly important with respect to a disease such as fibromyalgia that is poorly understood within much of the medical community." *Id.* (citing *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996) (describing fibromyalgia as an "elusive and mysterious" disease)).

MEMORANDUM DECISION AND ORDER - 13

The ALJ, however, is in the best position to make such credibility determinations and, for this reason, his credibility determinations are entitled to great weight. *Anderson v. Sullivan*, 914 F.2d 1121, 1124 (9th Cir. 1990). Generally, in determining whether the claimant's subjective testimony regarding the severity of his/her symptoms is credible, "the ALJ may consider [claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [claimant's] testimony and [his/her] conduct, [claimant's] daily activities, [claimant's] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." *Light v. Soc. Security Admin.*, 119 F.3d 789, 791 (9th Cir. 1997).

Here, the ALJ found Petitioner's allegations "not fully credible" for the following reasons:

> She testified that she has insurance but "saves it" for her son. It is not credible that an individual would have the severe problems and pain described by the claimant and not seek treatment that was available. Significantly, I note that the claimant contradicted that allegation in reporting that she borrowed money from her parents to obtain medical treatment. The claimant also testified that she does not eat much but her weight increased from 320 pounds in July of 2003 to 369 pounds in March of 2005 (Exhibit 17F). It is also significant that contrary to her alleged limitations she is the principal care provider for a six year old, independent with her personal care and with all her household chores.

(AR 25). The ALJ also noted Petitioner's lack of treatment for her mental impairments (AR 21), and that Petitioner "admits that when she takes her medications most of the time she can participate in activities" (AR 24) and "acknowledges that she does not take the medication on a consistent basis." (AR 25).

MEMORANDUM DECISION AND ORDER - 14

In the Court's view, these reasons are sufficiently specific and supported by the evidence to conclude that the ALJ's decision is based on permissible grounds and he did not arbitrarily discredit Petitioner's testimony. *See Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991). The record indicates that Petitioner has gained a substantial amount of weight although she testified she does not eat very much (*see* AR 148, 206, 217, 304, 351), taking medication takes some of Petitioner's pain away (AR 347), and Petitioner frequently goes without medication (AR 350). Petitioner also has reported to physicians that her pain has improved. (AR 295). Further, some reports of Petitioner's daily activity provide support for the ALJ's credibility determination. *See* (AR 100) (listing Petitioner's hobbies as being with her son "and going to the park and swimming"); (AR 356) (Petitioner's testimony that she grocery shops on Fridays); (AR 168) (Petitioner's report to Dr. Thiel that she "typically spends her days playing with her son and watching television," that she "may go outside and sprinkle the lawn in the late morning or do light housework," and that she felt capable of caring independently for household chores, cooking, cleaning, and laundry, but also hampered by her pain problem, recent hysterectomy, and low motivation). Although there is other evidence in the record that Petitioner's activities are more limited (*see, e.g.*, AR 105, 369-70), resolution of conflicts in the testimony and of credibility questions is a function of the ALJ. *Russell v. Bowen*, 856 F.2d 81, 83 (9th Cir. 1988). For all of these reasons, and after a careful review of the record, the Court concludes that the ALJ properly found Petitioner to be not fully credible.

MEMORANDUM DECISION AND ORDER - 15

# V.

## CONCLUSION

Although there is some evidence tending to support Petitioner's position, Petitioner's primary contentions appear to be that the ALJ gave too much weight to the evidence upon which he relied and did not give enough weight to other evidence favorable to Petitioner. Petitioner argues that the record, when viewed as a whole, supports a conclusion that she was disabled within the meaning of the Act from her alleged onset date.

However, as discussed in this decision, the ALJ is the fact finder and is solely responsible for weighing and drawing inferences from facts and determining credibility. *Allen*, 749 F.2d at 579; *Vincent on Behalf of Vincent*, 739 F.2d at 1394; *Sample*, 694 F.2d at 642. If the evidence is susceptible to more than one rational interpretation, one of which is the ALJ's, as exists here, the Court may not substitute its interpretation for that of the ALJ. *Key*, 754 F.2d at 1549. The Court finds that the evidence upon which the ALJ relied can reasonably and rationally be relied upon to support his conclusion, despite the fact that such evidence may be susceptible to a different interpretation.

The Court concludes that the Commissioner's determination that Petitioner is not disabled within the meaning of the Social Security Act is supported by substantial evidence in the record and is based upon an application of proper legal standards. Accordingly, the Court will not substitute its interpretation or judgment for that of the ALJ in reaching his decision and the Commissioner's decision is upheld. *See Frost v. Barnhart*, 314 F.3d 359, 367 (9th Cir. 2002) (explaining that if "the evidence can reasonably support either affirming or reversing the

Commissioner's decision," the court will not substitute its judgment for that of the Commissioner).

## VI.

## ORDER

Based on the foregoing, the decision of the Commissioner is affirmed and this action is dismissed in its entirety with prejudice.



DATED: **June 26, 2007**.

Honorable Larry M. Boyle
U. S. Magistrate Judge